# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-02101-SCT

*LORRAINE C. CRAFT*

*v.*

*JAY DOUGLAS CRAFT*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/14/2000 |
| TRIAL JUDGE: | HON. SEBE DALE, JR. |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM R. WRIGHT |
| | W. BENTON GREGG |
| | DEBORAH H. BELL |
| ATTORNEYS FOR APPELLEE: | DAVID ALAN PUMFORD |
| | ERIK M. LOWREY |
| | ROBERT R. MARSHALL |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 6/06/2002 |
| MOTION FOR REHEARING FILED: | 7/8/2002; denied 9/19/2002 |
| MANDATE ISSUED: | 9/26/2002 |

**BEFORE McRAE, P.J., DIAZ AND CARLSON, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. On February 19, 1999, Lorraine C. Craft filed for divorce against Jay Douglas Craft on the ground of irreconcilable differences. Lorraine amended her complaint on April 12, 2000, and alleged that Jay committed adultery with her best friend. In his answer, filed on June 19, 2000, Jay admitted to both grounds for divorce. The matter was heard before the Chancery Court of Lamar County, Mississippi on August 29, 2000. The chancellor issued his Memorandum Opinion on November 7, 2000, and entered his Final Judgment of Divorce on December 18, 2000. The chancery court granted a divorce to Lorraine on

the ground of adultery. Lorraine appeals the property distribution, contending that the chancellor erred in classifying Jay's partnership with his brother as non-marital property.

## FACTS

¶2. Lorraine and Jay were married for about 12 years. The couple had no children together, although Jay has a son, Matthew, who lived with Jay and Lorraine from the age of five. It was undisputed that Lorraine contributed significantly to Matthew's upbringing. Lorraine's niece testified that Lorraine did a lot of the cooking and helped Matthew with his homework. She also testified that Jay did some cooking.

¶3. In 1979 Jay and his brother, Brad Craft, entered into a partnership to operate a used car business in Hattiesburg, Mississippi under the name of Craft Auto Sales. This partnership existed prior to Lorraine and Jay's marriage on May 30, 1987. Although Brad and Jay did not formalize the partnership until 1994, the brothers have filed tax returns as a partnership since 1980. The partnership agreement also provided for a $500,000 life insurance policy on the life of each partner with the beneficiary being the surviving brother. The proceeds would be paid to the decedent's estate which would effect a transfer of the total interest in the partnership to the surviving partner. Sometime after the marriage, Brad and Jay started acquiring real estate properties with some of the earnings from the dealership. This real estate was considered an asset of the partnership. Craft Auto Sales paid the property taxes. All of the property was acquired equally by Brad and Jay as joint tenants or tenants-in-common.

¶4. The value of the dealership and of the real estate investments increased during Jay and Lorraine's marriage. The real estate holdings grew to a value of $2,000,000. Jay's interest in the partnership was valued at approximately $1.16 million, according to Lorraine's expert, $850,000 according to Jay's expert, and $750,000 according to Jay himself as owner of half of the interest of Craft Auto Sales.

¶5. Both Lorraine and Jay were employed throughout their marriage. In 1996 Lorraine was a loan officer for UC Lending where her income was about $33,000 per year. She was promoted to office manager, and her income increased in 1998 to about $64,500 per year, not including "large bonuses" she received up until May of 1999, a company car, fully paid health insurance, and an allowance on company credit cards. Lorraine testified that she changed jobs in May of 1999 due to the stress of the divorce. She now works for a different loan institution. Her current base salary is $44,000 per year. Jay's income is approximately $128,000 per year. In the years that Lorraine and Jay lived together, they had combined earnings of $850,800, with Jay contributing approximately $588,000 and Lorraine contributing approximately $262,700. These figures were undisputed. The chancellor found that Lorraine was in good health, had no children, and was capable of earning an income of $65,000 to $75,000 a year.

¶6. Of the marital assets, Lorraine was awarded the marital home, valued at $225,000, subject to the mortgage, but with equity of $94,000. Sometime after Jay and Lorraine separated, she withdrew $80,000 cash from the marital funds. She used $30,000 of the withdrawn funds to purchase a 1999 Mazda automobile. She was awarded the automobile, as well as the $80,000 she had withdrawn. She was also awarded a $15,000 retirement account. She was awarded $7,000 to contribute to her attorney's fees. Furthermore, after the separation, and when Jay moved out, on or about February 5, 1999, Jay voluntarily paid Lorraine $500 per week, plus $50 per month for her cellular phone and $50-70 per week for the maid service. He continued the voluntary payments until April, after which time the chancery court ordered Jay to continue with the payments. Jay made the payments on a timely basis throughout the separation.

¶7. Of the remaining marital assets, which were classified as Jay's non-marital property according to the exhibit, Jay was left with a little over $10,000, not including a stock account valued at $35,000 which he purchased in March of 2000, after the marital estate was settled. As for Loraine's non-marital assets, she has a one-third future interest in her father's life estate in Lamar County, which consists of 129 acres. This asset was not included on her list of financial assets submitted to the chancery court. Also relevant to the division of marital assets, the chancery court established that Jay sustained net gambling losses of approximately $67,000 over a three to four year period.

¶8. As for Lorraine's contention that Jay's half of Craft Auto Sales should be classified as marital, Lorraine testified that, during the early years of their marriage, when Jay and Brad would rotate Saturdays running the business, she helped Jay with some general clerical work for the partnership on his Saturday rotation. She also stated that she was involved with the business when she once helped Jay to audit Regal Financial Services, a lending company started by Jay, Brad, and two other partners. She testified that she encouraged Jay and Brad to invest in real estate. Jay's testimony, on the other hand, was that Lorraine did not do any work for Craft Auto Sales and that when she was there, she "just mainly hung around" and that she had not been there on a Saturday at all for the past 7 to 8 years.

¶9. At trial, Loraine requested $504,153.29 in lump sum alimony or real estate and $3000 per month in permanent periodic alimony. The chancery court classified Jay's interest in the partnership as a non-marital asset. The court equitably distributed the marital assets and awarded Lorraine $175,000 in lump sum alimony, as well as periodic alimony in the amount of $2000 per month for twenty-four months. The chancellor determined that when dividing the marital assets, which totaled slightly less than $350,000, there remained a marked deficit on the part of Lorraine. Therefore, the chancellor awarded the lump sum and periodic alimony as an adjunct to the equitable distribution of the marital estate. The primary contention on appeal is the division and classification of assets. Jay's interest in the partnership and in the real estate was not included in the marital assets. Lorraine contends that those assets should have been classified as marital. The following issues are now before this Court:

> **I. Whether the court erred in determining the ownership and classification of assets.**
>
> **II. Whether the court erred in not awarding Lorraine an interest in the business and real estate assets.**
>
> **III. Whether the court erred in finding Lorraine had not contributed to the appreciated value of the assets.**
>
> **IV. Whether the court erred in finding that Jay's brother would have to be joined before equitable distribution of the marital assets.**
>
> **V. Whether the court erred in failing to grant Lorraine permanent or long-term periodic rehabilitative alimony.**

## DISCUSSION

¶10. This Court's scope of review in domestic relations matters is limited. ***Montgomery v. Montgomery***, 759 So. 2d 1238, 1240 (Miss. 2000). Absent an abuse of discretion, this Court will uphold the decision of the chancellor. ***Hollon v. Hollon***, 784 So. 2d 943, 946 (Miss. 2001). This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal

standard was applied. ***Henderson v. Henderson***, 757 So. 2d 285, 289 (Miss. 2000).

## I. WHETHER THE COURT ERRED IN DETERMINING THE OWNERSHIP AND CLASSIFICATION OF ASSETS.

¶11. According to this Court's ruling in ***Johnson v. Johnson***, 650 So. 2d 1281, 1287 (Miss. 1984), the first step before division of the assets is for the chancellor to characterize the parties' assets as marital or non-marital. This Court also ruled, in ***Hemsley v. Hemsley***, 639 So. 2d 909, 915 (Miss. 1994), that assets accumulated during the marriage are marital assets and are subject to equitable division unless it can be proven that such assets are attributable to one of the parties' separate estates either prior to the marriage or outside of the marriage. The second step is for the chancellor to equitably divide the marital property according to the guidelines set forth in ***Ferguson v. Ferguson***, 639 So. 2d 921, 928 (Miss. 1994). In ***Johnson***, this Court stated that "[i]f there are sufficient marital assets which, when equitably divided and considered with each spouse's marital assets, will adequately provide for both parties, no more need be done." ***Johnson***, 650 So. 2d at 1287. Where there is a deficit left for one of the parties, "then alimony based on the value of non-marital property should be considered." ***Id.*** Lorraine does not dispute the division of the stipulated marital property. She does, however, dispute the chancellor's finding that Jay's one-half interest in Craft Auto Sales is not marital property.

¶12. Lorraine contends that she is entitled to one-half of Jay's interest in Craft Auto Sales, while Jay contends that the property of the partnership is not a marital asset. The chancellor found that the partnership existed several years prior to the marriage and that it remained outside of the marriage. The chancellor found that Lorraine was never a significant contributor to the partnership. She took no active part in the business, did not participate in business decisions, and did not invest or contribute money to its ongoing operations. The chancellor found that Lorraine was merely present to drop Jay off a few times to repossess a car or to go with him to observe an auction, or to go with him to the office to simply be with him. There was no commingling of partnership money and affairs with personal money and affairs. *See **Pearson v. Pearson***, 761 So. 2d 157, 164 (Miss. 2000). The chancellor ultimately concluded that Lorraine's active contributions to the business were negligible.

¶13. As for Lorraine's economic and domestic contributions to the marital estate, this Court has held that "the contributions and efforts of the marital partners whether economic, domestic, or otherwise are of equal value." ***Hemsley***, 639 So. 2d at 915. On the other hand, it is well-established that a spouse is not automatically entitled to an equal share of property accumulated through the contributions of both parties. ***Brown v. Brown***, 574 So.2d 688, 691 (Miss.1990). Furthermore, this Court has stated that the "[a]ppreciation of the value of any non-marital asset may be taken into account to arrive at a fair division to the extent the non-titled spouse had made a contribution toward the appreciation of value." ***Carrow v. Carrow***, 642 So. 2d 901, 907 (Miss. 1994).

¶14. Property may not always be easily classified as either strictly marital or non-marital. As far as classifying Jay's one-half interest in the partnership as non-marital property, the business portion and ownership of the partnership did remain non-marital in character during the course of Jay and Lorraine's marriage. However, while Lorraine may not be entitled to one-half of Jay's interest in the partnership, she is entitled to an equitable distribution of the accumulated portion or the increase in value of Jay's one-half interest, as per ***Hemsley***. The accumulated portion of Jay's one-half interest in the partnership would be considered marital property. Therefore, this Court must decide whether the chancellor properly considered

the accumulation of assets when dividing the marital estate. This Court finds that the chancellor did ultimately consider Lorraine's indirect contributions to the increase in value of Jay's interest in the partnership. Lorraine was awarded the majority of the marital assets, as well as a significant amount of lump sum and periodic alimony.

¶15. If the trial judge committed any error at all, it was only in failing to recognize that the accumulated or increased value of Jay's interest in the partnership should be labeled marital property subject to equitable division. Neither party could establish with any degree of accuracy how much Jay's one-half interest in the business had increased from the time Jay and Lorraine were married up to the time they separated. Lorraine testified that the partnership was worth very little when Jay and Lorraine got married. On the other hand, the partnership did operate for at least 6-7 years prior to the marriage, and Jay was at least able to verify that his income from the partnership in 1987 was $16,000. The value of Jay's interest in the partnership increased to somewhere between $750,000 and $1.16 million and the value of the real estate holdings of the partnership increased to about $2 million; so, while we do not know the difference of the increase, we can at least conclude that Lorraine's indirect contributions to the accumulation of assets are worth some significant amount.

¶16. The chancellor stated that the marital estate was worth a little less than $350,000, of which Jay contributed approximately two-thirds. Despite the fact that Jay was only awarded a little more than $10,000 out of the marital assets, the chancellor stated that there remained a marked disparity when considering the non-marital property, namely, Jay's interest in the partnership. The chancellor implicitly considered the accumulated value of Jay's interest in the partnership when he equitably divided the marital estate, evidenced by the award of nearly all of the marital estate to Lorraine.

¶17. Additionally, based on ***Johnson***, the chancellor also awarded lump sum and period alimony to account for the remaining disparity created by the accumulated value of Jay's interest in the partnership. Had the chancellor determined beforehand that the accumulated value of Jay's one-half interest in the partnership and real estate was marital property, he may not have found a disparity at the end. Ultimately, the chancellor reached a fair distribution of the entire estate. Lorraine's indirect contributions to the accumulation of assets in the partnership were satisfied through the lump sum alimony, periodic alimony, and through the award of the nearly the entire marital estate. This Court will not disturb the chancellor's discretionary determination of the value of Lorraine's interest in the accumulation of the partnership and real estate. It is clear, based on the record, that "fairness [was] the prevailing guideline in [this] marital division." ***Ferguson***, 639 So.2d at 929.

### II. WHETHER THE COURT ERRED IN NOT AWARDING LORRAINE AN INTEREST IN THE BUSINESS AND REAL ESTATE ASSETS.

¶18. This issue is closely related to the first issue. Lorraine is not entitled to an interest in the business and real estate assets of the partnership. However, she is entitled to an equitable distribution of the accumulated value of Jay's interest in the partnership and of Jay's interest in the real estate holdings. This Court finds that Lorraine did receive an equitable portion from her indirect contributions to the partnership in the form of alimony and in the the award of the bulk of the marital estate.

### III. WHETHER THE COURT ERRED IN FINDING LORRAINE HAD NOT CONTRIBUTED TO THE APPRECIATED VALUE OF THE ASSETS.

¶19. This issue was considered along with the first issue. This Court finds that the chancellor considered the appreciated value of the partnership and real estate in his final distribution of the marital assets and in the awards of alimony.

### IV. WHETHER THE COURT ERRED IN FINDING THAT JAY'S BROTHER WOULD HAVE TO BE JOINED BEFORE EQUITABLE DISTRIBUTION OF THE MARITAL ASSETS.

¶20. Under M.R.C.P. 19, joinder of parties is only necessary if complete relief cannot be accorded among those who are already parties to the suit. Craft Auto Sales was not joined as a party in this lawsuit. This issue is not relevant to a final resolution of the case, since this Court finds that the accumulated value of Jay's interest in the partnership and in the real estate was considered in the overall distribution of assets.

### V. WHETHER THE COURT ERRED IN FAILING TO GRANT LORRAINE PERMANENT OR LONG-TERM PERIODIC REHABILITATIVE ALIMONY.

¶21. Lorraine's main contention was that she should be awarded more alimony because she believed Jay's interest in Craft Auto Sales should be included in the marital assets. Jay's interest in the partnership, as discussed in issue I., was considered by the chancellor. However, this Court has considered the following factors when awarding alimony:

1) the income and expense of the parties;

2) the health and earning capacity of the parties;

3) the needs of each party;

4) the obligations and assets of each party;

5) the length of the marriage;

6) the presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;

7) the age of the parties;

8) the standard of living of the parties, both during the marriage and at the time of the support determinations;

9) the tax consequences of the spousal support order;

10) fault or misconduct;

11) wasteful dissipation of assets by either party; or

12) any other factor deemed by the court to be "just and equitable' in connection with the setting of spousal support.

*Pearson*, 761 So. 2d at 165.

¶22. Lorraine has a separate income with the capacity to earn more. Lorraine was 39 years old at the time of the divorce, and Jay was 42. The chancellor stated that there was nothing to detract from Lorraine's employability and that she was in good health. The marriage lasted about 13 years. Any direct assistance in the husband's business was negligible. The fault of Jay in committing adultery, his dissipation of assets due to the gambling, and the standard of living of the parties were properly considered in determining the equitable division of the marital assets, as well as the award of alimony, which amounted to $175,000 in lump sum and $2,000 per month in periodic alimony for 2 years. The chancellor has considerable discretion in determining the amount and type of alimony. *Id.* This Court sees no reason to disturb that discretion in this case.

## CONCLUSION

¶23. Based on a review of the record, we find that the chancellor was fair in his determination of the amount of alimony to award to Lorraine. Furthermore, we find that the chancellor considered the accumulation of Jay's interest in the partnership and in the real estate when equitably dividing the marital estate. The chancellor, using his discretion, awarded an overall fair amount of alimony based on the total estate. Therefore, the judgment is affirmed.

¶24. **AFFIRMED.**

**McRAE AND SMITH, P.JJ., EASLEY, CARLSON AND GRAVES, JJ., CONCUR. COBB, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, C.J., AND WALLER, J.**

**COBB, JUSTICE, DISSENTING:**

¶25. The majority concludes that the chancellor erred by not including the appreciation of Jay's 50% share of Craft Auto Sales[1] as a marital asset, but somehow made up for this error in his award of alimony,[2] and reached a fair distribution of the entire estate. Because I disagree strongly, I respectfully dissent.

¶26. The chancellor correctly determined that the "first order of business" should be the resolution of whether Jay's half of Craft Auto Sales is a marital asset subject to equitable distribution. Unfortunately, the chancellor committed manifest error in this initial step of classification, tainting the entire process, and necessitating reversal.

¶27. According to *Johnson v. Johnson*, 650 So.2d 1281, 1287 (Miss. 1994), to equitably divide the assets pursuant to a divorce, a chancellor is directed as follows:

> Division of marital assets is now governed under the law as stated in *Hemsley* and *Ferguson*. First, the character of the parties' assets, i.e., marital or nonmarital, must be determined pursuant to *Hemsley*. The marital property is then equitably divided, employing the *Ferguson* factors as guidelines, in light of each parties' nonmarital property.

¶28. The chancellor correctly cited *Hemsley v. Hemsley*, 639 So.2d 909, 914 (Miss. 1994) for the rule that assets accumulated during the marriage are marital assets and subject to equitable distribution unless it can be proven that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage. The chancellor then concluded that the partnership existed prior to the marriage, and its assets at all pertinent times was outside the marriage. In doing so, the chancellor misstated and

misapplied the facts of this case, and misstated and misapplied Mississippi's law of equitable distribution.

### A. Who owned the Assets?

¶29. The chancellor considered the car business and the real estate holdings to be the property of the partnership. He did so, even though the evidence was uncontroverted that the partnership had no assets. Jay admitted that all of the property purportedly owned by the partnership is titled in Jay's and Brad's names. Jay further admitted that the only asset owned prior to the marriage and still owned at the time of the trial was the lot on which the car business was located. Even though Craft Auto Sales existed as a partnership at the time of the marriage, Craft Auto Sales acquired no assets during the marriage. All of Jay's interest in Craft Auto Sales, save for the lot, was actively acquired in his name during the marriage. Thus, pursuant to *Hemsley*, all of Jay's interest in Craft Auto Sales, save for the lot, is clearly marital property. However, even if the assets had been in the name of the partnership, instead of Jay's name, it would not change the ultimate classification of Jay's share of those assets as marital property.

### B. Classifying the Assets.

¶30. One of the basic principles of our equitable distribution law is that assets acquired by the active efforts of either spouse during the marriage are considered marital property. As we stated in *A & L, Inc. v. Grantham*, 747 So.2d 832, 839 (Miss. 1999):

> The burden is upon one claiming assets to be non-marital to demonstrate to the court their non-marital character. This burden goes beyond a mere demonstration that the asset was acquired prior to marriage. Where, as here, there is a suggestion that the net equity in the assets may have increased due to the spouse/owner's efforts, as opposed to enhanced value passively acquired, there must be a showing such as would allow the chancellor to separate the former, a marital asset, from the latter, a non-marital asset.

¶31. In the case sub judice, the chancellor found that "the worth of the partnership has increased from a quite modest but unstated value at the time of the marriage of Jay and Lorraine to a quite substantial value." According to James A. Koerber, a CPA and expert business evaluator, Jay's one-half interest in the partnership had a value of $1,159,000, at the time of the trial. Further, the chancellor correctly found that the substantial increase in value of the partnership was an active, as opposed to passive, appreciation. Then, inexplicably, the chancellor concluded that "Lorraine cannot be credited with any direct participation in or contribution to that appreciation, and no distribution of any part thereof can be made to her." This conclusion is clearly erroneous. If the appreciation of an asset is the result of the efforts of either spouse, it is considered active appreciation and becomes a marital asset. While Jay's share of the value of the partnership prior to the marriage is arguably non-marital property, the burden was on him to prove that value at trial. He offered no evidence in this regard, and thus failed to meet his burden of proof. As such, Jay's share of the partnership was clearly marital property and the chancellor committed manifest error in determining otherwise.

### C. Dividing the Assets.

¶32. After erroneously classifying the assets, the chancellor then compounded that error by finding that Lorraine had contributed one-third and Jay had contributed two-thirds to the accumulation of the marital assets. In doing so, the chancellor was clearly basing the division of property only on the number of dollars

brought into the marriage. This was clearly erroneous. "In *Ferguson v. Ferguson*, we directed the chancery courts to evaluate the division of marital assets by following a nonexclusive list of eight guidelines and "*to support their decisions with findings of fact and conclusions of law for purposes of appellate review.*'"*Kilpatrick v. Kilpatrick,* 732 So.2d 876, 880 (Miss. 1999)(emphasis in original). Further, "We assume for divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value." *Hemsley*, 639 So.2d at 914.

¶33. The facts of this case certainly indicate that Lorraine was certainly entitled to more of the marital property than one-third, in fact she was clearly entitled to more than one-half.

¶34. First, Jay admitted that Lorraine was the primary care-giver of his son of a previous marriage from age five until age eighteen. In fact, Lorraine testified that she was often home caring for his son, while Jay was out drinking and gambling. Lorraine further testified that she was the one who helped Jay's son with his homework, and encouraged him in his sports activities. In *Cork v. Cork*, 811 So.2d 427. 429 (Miss. Ct. App. 2001), the Court of Appeals unanimously affirmed the husband receiving sixty-five percent of the marital assets, where both he and his wife worked throughout the marriage, and the husband had helped support the wife's child from a previous marriage, as follows:

> The court found that Mr. Cork had supported Mrs. Cork's child throughout the marriage and determined it appropriate that he receive a larger share of the marital estate. The chancellor awarded Mrs. Cork thirty-five percent (35%) of the marital assets and Mr. Cork sixty-five percent (65%) of the marital assets.

¶35. Second, Jay admitted, and the chancellor concluded that the break-up of the marriage was entirely Jay's fault. One of the factors to consider in equitable distribution is "Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage." *Ferguson v. Ferguson*, 639 So.2d 921, 928 (Miss. 1994).

¶36. Third, Jay admitted that he had sustained gambling losses of around $67,000 over just the previous few years. Further, prior to the divorce, Jay had moved in with and was supporting his new girlfriend. Dissipation of assets by one spouse is another of the eight factors to consider. *See Ferguson*, 639 So.2d at 928.

¶37. In *Owen v. Owen*, 798 So.2d 394, 398 (Miss. 2001), we stated:

> Margaret alleges that the chancellor committed reversible error in basing the division of marital assets upon one factor--financial contributions to the accumulation of marital property--rather than upon all eight *Ferguson* factors. This Court finds that the chancellor's division of property did improperly focus only on Kenneth's economic contributions to the marriage, and accordingly we reverse the decision.

We went on to hold:

> Chancellors are to consider those factors on the record and are to "support their decisions with findings of fact and conclusions of law for appellate review." This Court has reversed decisions where, even though the chancellor may have actually applied the *Ferguson* factors, the chancellor failed to make specific findings on the record. At the same time, not every case requires consideration of all eight of the factors. This Court has stated that the chancellor "may consider only those factors he finds

'applicable' to the property in question." However, in this case, there were certainly more *Ferguson* factors that were "applicable" other than just Kenneth's economic contributions. Accordingly, the chancellor should have addressed these factors on the record.

*Owen*, 798 So.2d at 399 (citations & parenthetical omitted).

¶38. In sum, equitable distribution of marital property begins with the assumption that the contribution of the spouses is equal, whether that contribution is made in the workforce or at home. From that starting point, the chancellor can adjust the award in the favor of one of the spouses, after making findings of fact and conclusions of law, if the application of the *Ferguson* factors so warrants doing so. In applying the factors to this case, it is clear that the relevant factors favor adjusting the award beyond the 50% starting point in Lorraine's favor. Instead, the chancellor concluded that because Jay contributed two-thirds of the income to the family, he had further contributed two-thirds to the accumulation of the marital assets. This conclusion is manifest error. Further, the chancellor's division of property improperly focuses only on Jay's economic contributions to the marriage, and accordingly, pursuant to *Owens*, we should reverse that decision.

### D. Awarding Alimony.

¶39. Finally, even though the chancellor awarded Lorraine lump sum alimony of $175,000 and periodic rehabilitative alimony of $48,000, this award is woefully inadequate. In *Ferguson*, 639 So.2d at 934, we said, "it must be remembered, the goal in a divorce case is to do equity." Further, this Court will interfere with an alimony award "where the decision is seen to be oppressive, unjust, or grossly inadequate so as to evidence an abuse of discretion." *Chapel v. Chapel*, 700 So.2d 593, 598 (Miss. 1997). In *Ferguson*, this Court stated:

> Alimony and equitable distribution are distinct concepts, but together they command the entire field of financial settlement of divorce. Therefore, when one expands, the other must recede. . . **In the final analysis, all awards should be considered together to determine that they are equitable and fair.**

*Ferguson*, 639 So.2d at 929 (emphasis added).

¶40. In *Tilley v. Tilley*, 610 So.2d 348 (Miss. 1992), this Court discussed the four factors to be considered in whether to award lump sum alimony:

> 1) Substantial contribution to accumulation of total wealth of the payor either by quitting a job to become a housewife, or by assisting in the spouse's business.
>
> 2) A long marriage.
>
> 3) Where recipient spouse has no separate income or the separate income is meager by comparison.
>
> 4) Without the lump sum award the receiving spouse would lack any financial security.

*Id.* at 352 (citations omitted). We went on to say, "**the single most important factor is the disparity of the separate estates.**"*Id.* (emphasis added)(citing *Cheatham v. Cheatham*, 537 So.2d 435, 438 (Miss. 1988)). Further, "lump sum alimony is intended as an equalizer between the parties to serve equity amongst them completely once and for all." *Hubbard v. Hubbard*, 656 So.2d 124, 130 (Miss. 1995).

¶41. The majority has concluded that the chancellor compensated for his errors in equitable distribution by his award of alimony. With all due respect, this is just not true. Although the chancellor did not specifically total the respective estates after equitable distribution, from the record, the following is a rough estimate:

| **Lorraine** | **Jay** |
|---|---|
| 1. House equity $ 90,000 | 1. Craft Auto Sales $1,159,000 |
| 2. Furniture 17,000 | 2. Personal Property 10,000 |
| 3. Automobile 25,000 | 3. Ameri-trade Stock 35,000 |
| 4. Retirement Acct. 15,000 | |
| **Total $147,000** | **Total $ 1,204,000** |
| add alimony 223,000 | subtract alimony 223,000 |
| **Adjusted total $ 370,000** | **Adjusted Total $ 981,000** |

¶42. As can be seen, Jay's estate was nearly eight times larger, or over a million dollars more than Lorraine's estate after equitable distribution. To do equity, the chancellor awarded Lorraine $223,000 in total alimony. Even after that award, Jay's estate is two and one-half times larger, or over six hundred thousand dollars more than Lorraine's estate.

¶43. Besides the inequity in the size of their estates, there is great disparity between their respective incomes. At the time of the trial, Jay's income was around $126,000 per year, while Lorraine was making less than a third of that amount. Thus, the two and one-half times disparity is guaranteed to widen with time. Even if the chancellor had not committed reversible error in classifying and dividing the assets, the inadequate alimony award alone is sufficient to reverse this case.

### E. *Conclusion.*

¶44. The chancery court's finding that Jay's share of Craft Auto Sales is non-marital property should be reversed for either of two reasons. First, the partnership did not own any property, and all the property was in fact titled in the name of Jay and Brad, and all property except the car lot was acquired during the marriage. Second, Craft Auto Sales was worth very little at the time of the marriage, and its increase in value was the result of active appreciation, thus marital property.

¶45. The chancery court further erred by not properly considering all of the relevant *Ferguson* factors, by concluding that Lorraine had only contributed one-third to the accumulation of the marital assets, making its inequitable alimony award.

¶46. For all the reasons stated herein, I respectfully dissent.

**PITTMAN, C.J., AND WALLER, J., JOIN THIS OPINION.**

1. Craft Auto Sales is a partnership with Jay and his brother Brad equal partners. They began the partnership in 1979, buying and selling used cars. Sometime after Jay's marriage to Lorraine, the partnership diversified into investment real estate. Although they called this new activity Craft Investments, it seems as though the two business entities were operated as one, and I will similarly treat them as one entity.

2. I can find no authority that states that a chancellor can misstate and misapply the law of equitable

distribution, but somehow correct this error by granting alimony. We did say in *Ferguson* that equitable distribution and alimony must be considered together and when one expands, the other must recede. However, I do not interpret that as affirming manifest error in one because a setoff is made in the other.